1

2                                                          **E-Filed 6/17/09**

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10

11

12   LESTER E. NELSON,                    Case Number 08-2924 JF

13                         Plaintiff,     ORDER[1] DENYING CROSS-MOTIONS
                                          FOR SUMMARY JUDGMENT AND
14             v.                         GRANTING  PLAINTIFF'S
                                          ALTERNATIVE MOTION FOR REMAND
15   MICHAEL J. ASTRUE,
     Commissioner of Social Security,
16
                          Defendant.
17

18

19                           **I.  BACKGROUND**

20       Plaintiff Lester E. Nelson ("Nelson") filed this action on June 12, 2008, appealing a

21   decision by Defendant Commissioner of Social Security ("the Commissioner") that denied him

22   disability insurance benefits and supplemental security income.[2]  On September 18, 2008, the

23   Court granted Nelson's application to proceed *in forma pauperis*.  The parties have filed cross-

24   _____

25       [1] This disposition is not designated for publication in the official reports.

26       [2] The challenged decision was rendered by Administrative Law Judge Brenton L.
     Rogozen ("the ALJ") on October 11, 2007.  The ALJ's decision became final on April 14, 2008,
27   when the Appeals Council of the Social Security Administration denied Plaintiff's request for
     administrative review of the decision.
28

1   motions for summary judgment.  For the reasons set forth below, the Court will deny both

2   motions and will grant Nelson's alternative request to remand the case for further proceedings

3   consistent with this Order.

4        The following facts are taken from the ALJ's decision of October 11, 2007 and the

5   accompanying Administrative Record ("AR").  Born on June 21, 1951, Nelson was fifty years

6   old on his alleged onset date and fifty-six years old at the time of the hearing.  *See* AR at 36.  He

7   attended Boy's Republic, a kind of "detention facility", after seventh grade and did not earn a

8   high school diploma or a GED.  *Id.* at 37-38.  He worked as an RV mechanic for his entire life.

9   *Id.* at 38.  Nelson alleges that he became disabled on March 15, 2002, with further aggravation

10  resulting from a surgery in August 2002.  His conditions include a "herniated disk-neck",

11  diabetes, high blood-pressure, and complications from neck surgery.  *Id.* At 115.  On April 5,

12  2005, Nelson filed applications for disability insurance benefits and supplemental security

13  income.  *Id.* at 91, 95.  His applications were denied initially and upon his motion for

14  reconsideration.  *Id.* at 62.  Nelson testified at the hearing before the ALJ.  Vocational expert

15  Thomas Linvill also testified.  *Id.* at 34

16       The ALJ found that Nelson was disabled within the meaning of the Social Security Act

17  beginning on June 21, 2006, but was not disabled prior to that date.  *Id.* at 23.  The ALJ

18  evaluated Nelson's condition pursuant to the sequential process required by 20 CFR §§

19  404.1520(a) and 416.920(a).  AR at 11.  At step one, the ALJ concluded that Nelson had "not

20  engaged in substantial gainful activity since March 15. 2005, the alleged onset date."  *Id.* at 12.

21  At step two, the ALJ found that Nelson's obesity, degenerative changes of the cervical spine,

22  status post cervical fusion in August 2002, left C6 and C7 cervical radiculopathy, chronic pain

23  syndrome and a depressive disorder, not otherwise specified, constituted a severe combination of

24  impairments under 20 CFR §§ 404.1520(c) and 416.920(c).  *Id.* at 13.  At step three, the ALJ

25  concluded that Nelson did not have an impairment or combination of impairments that met or

26  medically equaled one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.*

27       In determining Nelson's residual functional capacity, the ALJ found that Nelson was

28

2

1   "limited to lifting and carrying no more than 20 pounds occasionally and no more than 10 pounds

2   frequently.  The claimant is also limited to standing and/or walking no more than 6 hours total in

3   an 8-hour workday and sitting no more than 6 hours in an 8-hour workday. " *Id.* at 13.  The ALJ

4   found that Nelson's residual functional capacity enabled him to "perform a significant number of

5   jobs in the national economy." *Id.* at 22.  The ALJ concluded that Nelson was "not disabled" as

6   defined by the Social Security Act prior to June 21, 2006. *Id.*

7                                              **II.  LEGAL STANDARD**

8   **A. Standard for Reviewing the Commissioner's Decision**

9           Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the Commissioner's

10  decision denying Nelson benefits.  The Court must affirm the ALJ's decision if it determines that

11  substantial evidence supports the ALJ's findings and that the ALJ applied the correct legal

12  standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d

13  1255, 1257 (9th Cir. 1992).  In this context, the term "substantial evidence" means "more than a

14  mere scintilla but less than a preponderance—[it] is such reasonable evidence that a reasonable

15  mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also*

16  *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the

17  ALJ's decision, the Court examines the administrative record as a whole, considering adverse as

18  well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501

19  (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the

20  Court must defer to the ALJ's decision. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

21  **B. Standard for Determining Disability**

22          A person is "disabled" for purposes of receiving social security benefits if he or she is

23  unable to engage in any substantial gainful activity caused by a physical or mental impairment

24  that is expected to result in death or that  has lasted or is expected to last for a continuous period

25  of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452

26  (9th Cir. 1984).

27           Social Security disability cases are evaluated using a five-step, sequential evaluation

28

                                                    3

1    process. 20 C.F.R. § 404.1520(4).  In the first step, the Commissioner must determine whether

2    the claimant currently  is engaged in substantial gainful activity ("SGA")[3]; if so, the claimant is

3    not disabled, and the claim is denied.  *Id.*  If the claimant is not engaged in SGA, the second step

4    requires the Commissioner to determine whether the claimant has a "severe" impairment or

5    combination of impairments that significantly limit the claimant's ability to perform basic work

6    activities; if not, the claimant is not disabled, and the claim is denied.  *Id.*  If the claimant has a

7    "severe" impairment or combination of impairments, the third step requires the Commissioner to

8    determine whether the impairment or combination of impairments meets or medically equals the

9    criteria of an impairment listed in 20 CFR Part 404, subpart P, Appendix 1.  If so, the claimant

10   will be found to be disabled.  *Id.*  In the fourth step, if the impairment has no equivalent in step 3,

11   the Commissioner must determine whether the claimant has sufficient "residual functional

12   capacity"[4] to perform his or her past work.  *Id.*  If so, the claimant is not disabled and the claim is

13   denied.  *Id.*  The claimant has the burden of proving that he or she is unable to perform past

14   relevant work.  *Drouin*, 966 F.2d at 1257.  If the claimant meets this burden, he or she has

15   established a *prima facie* case of disability.  Finally, in the fifth step of the sequential analysis,

16   the burden shifts to the Commissioner to establish that the claimant can perform other substantial

17   gainful work.[5]  *Id.*; 20 CFR §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th

18   Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

19        In evaluating the severity of mental impairments, the Commissioner must follow a special

20   technique, set out in parts b-e of 20 C.F.R. § 404.1520a , at each level in the administrative

21

22        [3]SGA is work that involves significant physical or mental activities performed for pay or profit. *See* 20 C.F.R. § 404.1520(b); *see also* 20 C.F.R. § 404.1572 (elements of SGA).

23

24        [4]A claimant's residual functional capacity ("RFC") is what he or she still can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

25

26        [5] There are two ways in which the Commissioner may meet the burden of showing that there is other work in significant numbers in the national economy that the claimant can perform:
27   (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

28

4

Case No. 08-2924 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND GRANTING  PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND
(JFEX1)

1   review process.  20 C.F.R. § 404.1520a(a).   The statute states that "at the initial and

2   reconsideration levels of the administrative review process, we will complete a standard

3   document to record how we applied the technique.  At the administrative law judge hearing. . .

4   we will document application of the technique in the decision."  20 C.F.R. § 404.1520a(e)**.**

5                                                   **III.  DISCUSSION**

6           Nelson asks that the Court reverse the Commissioner's final decision and  remand this

7   case to the Social Security Administration for immediate payment of benefits.  Alternatively,

8   Nelson asks that his case be remanded  for further administrative proceedings to determine

9   whether he is disabled.  The specific issues raised in this case are whether the ALJ properly: (A)

10  rejected the functional assessment of Dr. Fujimoto, Nelson's treating physician; (B) posed

11  hypothetical questions to the vocational expert; (C) discredited Nelson's self-reported daily

12  activities; (D) obtained vocational-expert testimony; and (E) complied with the methods required

13  for evaluating mental impairments.

14  **A. Whether the ALJ Properly Rejected the Assessment of Dr. Fujimoto**

15          Nelson argues that the ALJ was not justified in discounting the Medical Source

16  Statement, dated July 29, 2007, from Nelson's treating physician, Dr. Fujimoto.  If a treating or

17  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it

18  only by providing specific and legitimate reasons that are supported by substantial evidence.

19  *Bayliss v Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830).

20          The ALJ rejected Dr. Fujimoto's report in part because it was inconsistent with the

21  medical evidence as a whole.  AR 20.  A treating physician's testimony being "contradicted by

22  other. . . assessments of [claimant]'s medical condition" has been found to be a specific and

23  legitimate reason for the purpose of rejection.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d

24  1190, 1195 (9th Cir. 2004)**.**  In this case, Dr. Fujimoto's report was contradicted by the testimony

25  of multiple examining physicians, as well as the claimant's own statements.  Two examining

26  physicians, Dr. Gollan and Dr. Graubard, and two state agency reviewing doctors, Dr. David and

27  Dr. Lee, found that Nelson was capable of performing at least some medium work.  AR 18, 20-

28

Case No. 08-2924 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND GRANTING  PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND
(JFEX1)

1    21.  These and other findings by examining physicians are inconsistent with Dr. Fujimoto's

2    finding that Nelson suffered from extreme limitations.  Nelson's own testimony also differed on

3    numerous points.  For example, on May 20, 2005, Nelson reported that he walked around flea

4    markets on weekends (AR 148), while Dr. Fujimoto asserted that, going back to February 13,

5    2004, Nelson could walk only "0-1" city blocks, (AR 742); similarly, Nelson reported that he

6    could maintain his head and neck in a static position (AR 42), while Dr. Fujimoto said Nelson

7    "never" could do so (AR 743).

8          Additionally, Dr. Fujimoto greatly changed his retrospective assessment of Nelson's

9    limitations in his July 2007 opinion, without explanation.  In earlier examinations, he had found

10   normal strength (AR 424-425) and no motor deficits (AR 469).

11         The record shows the ALJ discounted Dr. Fujimoto's opinion was discounted for

12   legitimate reasons, including inconsistency with the weight of medical evidence and unexplained

13   changes from Dr. Fujimoto's earlier evaluations of Nelson.  Affording the ALJ's factual

14   determination the deference to which it is entitled, the Court finds no error.

15   **B. Whether the ALJ Properly Posed Questions to the Vocational Expert**

16         Nelson argues that the hypothetical questions posed to the vocational expert were

17   incomplete, and thus the expert's opinion has no evidentiary value.  However, the supposed

18   deficiencies stem from a failure to include elements of Dr. Fujimoto's opinion.  Since Dr.

19   Fujimoto's opinion was properly rejected, the Court finds no error.

20   **C. Whether the ALJ Properly Discredited Nelson's Self-Reported Daily Activities**

21         Nelson contends that the ALJ improperly discounted Nelson's pain testimony based upon

22   an inaccurate, paraphrased recital of Nelson's daily activities.   He claims that the actual record

23   does not provide sufficient grounds for the ALJ's adverse credibility determination.

24         The ALJ's assessment of a claimant's credibility must be "properly supported by the

25   record" and "sufficiently specific" to assure the reviewing court that the ALJ "rejected the

26   testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony

27   regarding pain."  *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1995) (quoting *Elam v.*

28

Case No. 08-2924 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND GRANTING  PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND
(JFEX1)

1    *Railroad Retirement Bd.*, 921 F.2d 1210, 1213–14 (11th Cir. 1991)(quotations omitted)).  Absent

2    affirmative evidence of malingering, an ALJ may not discount a claimant's testimony without

3    clear and convincing reasons.  *Vertigan v Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  This

4    Court must give deference to the ALJ's assessment of Nelson's credibility if it is supported by

5    the record and applicable legal standards.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

6    2001) (citing *Reddick v. Chafer*, 157 F.3d 715, 720 (9th Cir. 1998)).

7            Here, the ALJ assessed Nelson's claims pursuant to Social Security Ruling 96-7p and

8    Regulations 20 CFR §§ 404.1529 and 416.929.  AR at 14.  The ALJ found the claimant's

9    statements "not entirely credible" because of the lack of corroboration by examining and treating

10   physicians (except for Dr. Fujimoto, himself discredited), inconsistency between general

11   allegations of disabling pain and the claimant's reported capabilities, inconsistency between the

12   claimant's statements made to the doctors and those made at the hearing, and acknowledged

13   daily activities inconsistent with complaints of disabling symptoms.

14            In *Johnson v. Shalala*, the Ninth Circuit held that discrepancies between medical

15   evidence and a plaintiff's testimony may be considered in a credibility assessment.  *Johnson v.*

16   *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  "If a claimant is able to spend a substantial part of

17   his day engaged in pursuits involving the performance of physical functions that are transferable

18   to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's

19   allegations."  *Morgan v Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999).  In this case, the

20   report of daily activities relied upon by the ALJ was written by Nelson himself (AR 144-147) and

21   there is nothing to indicate that the ALJ had an inadequate understanding of it from the mere fact

22   that he did not cite it verbatim.  The verbatim contents of the report, when viewed in light of the

23   inconsistencies discussed above, provide a sufficient basis for the ALJ to have found Nelson's

24   testimony not entirely credible.  The record as a whole demonstrates that the ALJ did not dismiss

25   Nelson's testimony arbitrarily, but rather did so on permissible grounds.  Affording the ALJ's

26   credibility determination the deference to which it is entitled, the Court finds no error.

27   **D.  Whether the ALJ Obtained Proper Vocational-Expert Testimony**

28
                                                   7

1   Nelson asserts that the ALJ failed to obtain vocational-expert testimony regarding the

2   "unskilled", "light" occupational base, and that such testimony was required because Nelson was

3   restricted to "simple, repetitive tasks."  However, the fact that Nelson was restricted to

4   "unskilled" work is not relevant, as "the table rules reflect the potential occupational base of

5   unskilled jobs for individuals who have severe impairments which limit their exertional

6   capacities."  SSR 85-15. The ALJ did not find explicitly that Nelson is limited to "simple,

7   repetitive tasks," but merely cited Dr. Harrison's opinion along with those of two other doctors

8   who found no such restrictions.  It appears that "simple and repetitive" merely was part of Dr.

9   Harrison's definition of "unskilled."  In the instant case, there are no non-exertional limitations

10  that would preclude application of the grid based upon Nelson's abilities and limitations.

11  Accordingly, the Court finds no error.

12  **E. Whether the ALJ Properly Assessed Nelson's Mental Impairments**

13      Nelson argues that the ALJ failed to follow the special procedures required for assessing

14  mental impairments.  The Commissioner does not contend that the ALJ actually followed the

15  process set out in parts b-e of 20 C.F.R. § 404.1520a (which requires the inclusion of ratings of

16  specific "B-criteria" in the decision), but contends that this failure was immaterial to the final

17  result, since the impairment was found to be severe in any event.  This reasoning is faulty,

18  however, because the criteria also must be used at step 3 to determine whether the impairment or

19  combination of impairments meets or medically equals one of the impairments in 20 CFR Part

20  404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520a(a).  "Claimants are conclusively disabled if

21  their condition either meets or equals a listed impairment. " *Lester*, 81 F.3d at 828.  Thus, Nelson

22  conceivably could have prevailed at step 3.  The failure to follow or document the process is not

23  merely a technicality:

24      In *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000), we held that an ALJ's
        failure to follow the § 1520a technique requires reversal if the claimant has a
25      "colorable claim of a mental impairment." *Id*. (construing an earlier version of §
        1520a by which the ALJ was required to fill out and attach a specified form).
26      Amendments to § 1520a since *Gutierrez* have given the ALJ greater discretion in
        deciding how best to publish the mandated findings, but even under the amended
27      version, the regulation requires the ALJ to follow the special technique and to
        "document application of the technique in the decision."

28
                                                8

1   *Selassie v Barnhart*, 203 Fed.Appx. 174 (9th Cir. 2006).

2       Nelson had a colorable claim of a mental impairment, because his depressive disorder

3   was found to be part of a severe combination of impairments.  In light of the ALJ's failure to use

4   and document the special technique for evaluation of mental impairments, the Court must grant

5   Nelson's alternative request to remand the case for further administrative proceedings to

6   determine whether Nelson had an impairment or combination of impairments that met or

7   medically equaled one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1.

8                                        **IV.  ORDER**

9        Good cause therefor appearing, IT IS HEREBY ORDERED that Nelson's motion for

10  summary judgment is DENIED; the Commissioner's motion for summary judgment is DENIED;

11  and the matter is REMANDED for future proceedings consistent with this Order.

12

13  DATED: June 17, 2009

14

15

16

17                                        _____

18                                        JEREMY FOGEL
                                          United States District Judge

19

20

21

22

23

24

25

26

27

28

9

Case No. 08-2924 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND GRANTING  PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND
(JFEX1)

1  This Order has been served upon the following persons:

2

3  Elizabeth Firer      Elizabeth.Firer@ssa.gov

4

5  Harvey Peter Sackett      hps@hpspc.com, juanita@sackettlaw.com, julie@sackettlaw.com,

6  lucyc@sackettlaw.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 08-2924 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND GRANTING  PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND
(JFEX1)